# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY WAYNE INGRAM, | ) | CASE NO. 1:17CV2163 |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | JONATHAN D. GREENBERG |
| NANCY A. BERRYHILL, | ) | |
| Acting Commissioner | ) | |
| of Social Security, | ) | |
| | ) | **REPORT AND** |
| Defendant. | ) | **RECOMMENDATION** |

Plaintiff, Timothy Wayne Ingram, ("Plaintiff" or "Ingram"), challenges the final decision

of Defendant, Nancy A. Berryhill,[1] Acting Commissioner of Social Security ("Commissioner"),

denying his applications for Period of Disability ("POD"), Disability Insurance Benefits

("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Social

Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq.* ("Act").  This Court has jurisdiction

pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States Magistrate

Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and

Recommendation.  For the reasons set forth below, the Magistrate Judge recommends that the

Commissioner's final decision be AFFIRMED.

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social
Security.

1

# I.   PROCEDURAL HISTORY

In June 2014, Ingram filed applications for POD, DIB, and SSI, alleging a disability onset date of May 21, 2014 and claiming he was disabled due to diverticulitis, a colostomy reversal, and a ventral hernia.  (Transcript ("Tr.") 173, 175, 194.)  The applications were denied initially and upon reconsideration, and Ingram requested a hearing before an administrative law judge ("ALJ").  (Tr. 104, 107, 115, 122, 127.)

On April 27, 2016, an ALJ held a hearing, during which Ingram, represented by counsel, and an impartial vocational expert ("VE") testified.  (Tr. 38-55.)  On June 28, 2016, the ALJ issued a written decision finding Ingram was not disabled.  (Tr. 27-37.)  The ALJ's decision became final on September 22, 2017, when the Appeals Council declined further review.  (Tr. 1.)

On October 13, 2017, Ingram filed his Complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  The parties have completed briefing in this case.  (Doc. Nos. 13, 14.) Ingram asserts the following assignments of error:

(1) Whether the ALJ's rejection of Mr. Ingram's allegations of disabling symptoms as less than fully credible was based upon substantial evidence.  This is not harmless error, because a disability determination is inescapable if Mr. Ingram's complaints are deemed fully credible.

(2) Whether the ALJ's reliance on findings of a non-examining physician instead of those of an examining physician was contrary to law.

(Doc. No. 13.)

# II.   EVIDENCE

## A.   Personal and Vocational Evidence

Ingram was born in January 1961 and was 55 years-old at the time of his administrative hearing, making him a "person of advanced age" under social security regulations.  (Tr. 56.)  *See*

2

20 C.F.R. §§ 404.1563(e) & 416.963(e).  He has a high school education and is able to communicate in English.  (Tr. 195.)  He has past relevant work as a hospital housekeeper and small business owner.  (Tr. 32.)

**B.      Medical Evidence**[2]

In 2012, Ingram developed diverticulitis and an infection in his colon.  (Tr. 242.)  He required the surgical removal of a portion of his colon and a colostomy.  (*Id*.)  His colostomy was reversed four months later.  (*Id*.)

In March 2014, Ingram reported abdominal pain with strenuous activity.  (Tr. 260.)  A CT revealed a ventral hernia with small bowel content, but no signs of obstruction.  (*Id.*)  Ingram underwent a hernia repair on March 18, 2014.  (Tr. 265.)

A November 19, 2014 abdominal CT scan revealed (1) fatty metamorphosis of the liver; (2) fat containing outpouching of the abdominal wall just above the level of the umbilicus; (3) colonic diverticulitis; and (4) probable bilateral renal cysts.  (Tr. 290.)  On January 6, 2015, Ingram underwent surgical excision of a lower abdominal wall skin lesion.  (Tr. 303-304.)

Ingram initially visited primary care physician Hazem Nouraldin, M.D., on March 16, 2015.  He reported continued abdominal pain.  (Tr. 309.)  On examination, Ingram's abdomen was non-tender with normal bowel sounds.  (Tr. 311.)  His musculoskeletal examination revealed a normal range of motion, strength, and tone.  (*Id*.)  Ingram's sensation, gait, and coordination were also normal.  (*Id.*)

Ingram returned to Dr. Nouraldin on April 27, 2015.  (Tr. 313.) Dr. Nouraldin noted

---

[2]      The Court notes its recitation of the medical evidence is not intended to be exhaustive and is limited to the evidence cited in the Parties' briefs.

Ingram had both hypertension and diabetes, but good medication compliance and no complications.  (*Id.*)  Ingram's physical examination was normal, with no tenderness in his abdomen.  (Tr. 315.)

On May 16, 2015, Ingram reported minimal abdominal pain.  (Tr. 317.)  He indicated his abdominal discomfort was primarily in the peri-umbilical area and after eating certain foods. (*Id*.)  Ingram described normal eating habits, normal ileostomy function, and a moderate level of activity.  (*Id*.)  On examination, he had normal strength and range of motion, with no abdominal tenderness.  (Tr. 319.)

Ingram continued to see Dr. Nouraldin every few months for follow up.  In June, July, and October 2015, Ingram reported minimal pain in his abdomen, a moderate level of activity, and no current pain at his surgical incision.  (Tr. 322, 327, 332.)  Dr. Nouraldin's examination findings were normal, with no abdominal tenderness and normal bowel sounds.  (Tr. 324, 329, 334.)  Dr. Nouraldin advised Ingram to monitor his condition and take his medications.  (Tr. 335.)

On February 17, 2016, Ingram reported pain over his abdominal scar and Dr. Nouraldin prescribed Percocet.  (Tr. 337, 339.)  Ingram's physical examination remained normal.  (Tr. 338.)  On April 18, 2016, Ingram had no pain at his incision site and minimal pain in his abdomen.  (Tr. 341.)  There was no abdominal tenderness on examination.  (Tr. 342.)

**C.     State Agency Reports**

On August 25, 2014, Ingram underwent a physical consultative examination with Hasan Assaf, M.D.  He reported his abdominal surgical history and indicated chronic pain since his colostomy reversal in December 2012.  (Tr. 271.)  Ingram relayed he had pain in his knees and

hands.  (*Id.*)  Ingram indicated he cooked, cleaned, did the laundry, and shopped on a regular basis.  (Tr. 272.)  On examination, Ingram "appeared to be in no acute distress," had a normal gait, could walk on his heels and toes, fully squat, and rise from his chair without difficulty. (*Id*.)  He had tenderness in the left lower quadrant of his abdomen, but his bowel sounds were normal and his abdomen was soft.  (Tr. 273.)  He had negative bilateral straight leg raises.  His joints were stable and nontender, beyond some tenderness over his knees.  (*Id.*)  He had no sensory deficits and full strength in his upper and lower extremities.  (Tr. 273, 276.)  The range of motion in his cervical spine, shoulders, elbows, hips, knees, ankles, and dorsolumbar spine were all normal.  (Tr. 277-279.)

Based upon this examination, Dr. Assaf opined "[t]here are mild limitations on activities requiring prolonged standing and walking."  (Tr. 274.)

On March 10, 2015, Ingram underwent a physical consultative examination with Robin Benis, M.D.  (Tr. 242-250.)  Ingram reported his surgical history and pain.  (Tr. 242.)  He indicated he cooked daily, performed light housework several days a week, and shopped weekly. (Tr. 243.)  On examination, Ingram had a normal gait, could walk on his heels and toes, and fully squat.  (Tr. 244.)  He was able to rise from his chair without difficulty and used no assistive devices.  (*Id*.)  Dr. Benis observed Ingram's abdominal scars, but his bowel sounds were normal, his abdomen was soft and nontender, and there were no obvious infections.  (*Id*.)  He had full strength in his upper and lower extremities, and his grasp, manipulation, and fine motor coordination were normal.  (Tr. 247.)  His cervical spine, shoulder, elbow, and dorsolumbar ranges of motion were also normal.  (Tr. 248, 249.)

Based upon this examination, Dr. Benis concluded there were "[n]o limitations based on

5

today's exam."  (Tr. 245.)

On September 2, 2014, state agency physician John L. Mormol, M.D., reviewed Ingram's medical records and completed a Physical Residual Functional Capacity ("RFC") Assessment. (Tr. 61-62.)  Dr. Mormol determined Ingram could lift and carry 50 pounds occasionally, lift and carry 25 pounds frequently, stand and/or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday.  (Tr. 61.)  He further found Ingram could never climb ladders, ropes, or scaffolds.  (*Id*.)

On March 19, 2015, state agency physician Abraham Mikalov, M.D., reviewed Ingram's medical records and completed a Physical RFC Assessment.  (Tr. 85-86.)  He generally affirmed the findings of Dr. Mormol, with the additional limitations of occasionally climbing ladders, ropes, or scaffolds and frequently stooping.  (Tr. 86.)

**D.**     **Hearing Testimony**

During the April 27, 2016 hearing, Ingram testified to the following:

- He graduated high school and briefly attended college.  (Tr. 42.)  He served in the military from 1979 through 1991 and was honorably discharged.  (*Id*.)

- He last worked as a medical housekeeper in 2014.  (*Id*.)  He owned his own cleaning business.  (*Id*.)

- He had multiple abdominal surgeries, including a colostomy, a reversal of his colostomy, and a hernia repair.  (Tr. 43.)  Following the hernia repair, he developed an infection and required an additional procedure.  (*Id*.)

- He attempted to work following these procedures, but ultimately the pain was too great.  (*Id*.)  Mopping, lifting, and vacuuming exacerbate his pain.  (Tr. 43-44.)  He feels pain every time he moves, which he attributes to the "scar tissue built up inside."  (Tr. 44.)

- His doctor advised him there is no "surgical fix" for his scar tissue.  (Tr. 45.)  To relieve his pain, he takes a Percocet and sleeps.  (*Id*.)

6

The VE testified Ingram had past work as a hospital housekeeper (D.O.T. #323.687-010) and small business owner (D.O.T. #185.167-046).  (Tr. 52-53.)  The ALJ then posed the following hypothetical question:

> First one is, assuming a hypothetical person of claimant's age, education, and work experience.  This individual's limited to medium[3] work, as defined by the regulations, with only occasional climbing of ladders, ropes, or scaffolds; and frequent stooping.

(Tr. 53.)

The VE testified the hypothetical individual would be able to perform Ingram's past work as hospital housekeeper and small business owner.  (*Id.*)

## III.    STANDARD FOR DISABILITY

In order to establish entitlement to DIB under the Act, a claimant must be insured at the time of disability and must prove an inability to engage "in substantial gainful activity by reason of any medically determinable physical or mental impairment," or combination of impairments, that can be expected to "result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.130, 404.315 and 404.1505(a).1

A claimant is entitled to a POD only if: (1) he had a disability; (2) he was insured when he became disabled; and (3) he filed while he was disabled or within twelve months of the date the disability ended. 42 U.S.C. § 416(i)(2)(E); 20 C.F.R. § 404.320.

---

[3]     "Medium work" is defined as follows: "medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine he or she can also do sedentary and light work." 20 CFR § 404.1567(c). Social Security Ruling 83–10 clarifies that "a full range of medium work requires standing and walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting and carrying objects weighing up to 25 pounds." SSR 83–10, 1983 WL 31251 (1983).

A disabled claimant may also be entitled to receive SSI benefits.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981).  To receive SSI benefits, a claimant must meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4).  *See also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time of the disability application.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment, or combination of impairments, meets or medically equals a required listing under 20 CFR Part 404, Subpart P, Appendix 1, the claimant is presumed to be disabled regardless of age, education or work experience.  *See* 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).   Fourth, if the claimant's impairment or combination of impairments does not prevent him from doing his past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) *and*  416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

8

Here, Ingram was insured on his alleged disability onset date, May 21, 2014 and remained insured through December 31, 2019, his date last insured ("DLI.") (Tr. 29.) Therefore, in order to be entitled to POD and DIB, Ingram must establish a continuous twelve month period of disability commencing between these dates. Any discontinuity in the twelve month period precludes an entitlement to benefits. *See Mullis v. Bowen*, 861 F.2d 991, 994 (6th Cir. 1988); *Henry v. Gardner*, 381 F.2d 191, 195 (6th Cir. 1967).

## IV.    SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2019.

2.    The claimant has not engaged in substantial gainful activity since May 21, 2014, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3.    The claimant has the following severe impairments: residuals from diverticulitis and surgical repair, hypertension, and diabetes mellitus (20 CFR 404.1520(c) and 416.920(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with the following additional limitations: occasional climbing of ladders, ropes, or scaffolds and frequent stooping.

6.    The claimant is capable of performing past relevant work as a hospital housekeeper. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

7.    The claimant has not been under a disability, as defined in the Social Security Act, from May 21, 2014, through the date of this decision (20 CFR

9

404.1520(f) and 416.920(f)).

(Tr. 29-33.)

## V.  STANDARD OF REVIEW

"The Social Security Act authorizes narrow judicial review of the final decision of the Social Security Administration (SSA)."  *Reynolds v. Comm'r of Soc. Sec.*, 2011 WL 1228165 at * 2 (6th Cir. April 1, 2011).  Specifically, this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010); *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence has been defined as "'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In determining whether an ALJ's findings are supported by substantial evidence, the Court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

Review of the Commissioner's decision must be based on the record as a whole.  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The findings of the Commissioner are not subject to reversal, however, merely because there exists in the record substantial evidence to support a different conclusion.  *Buxton v. Halter*, 246 F.3d 762, 772-3 (6th Cir. 2001) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)); *see also Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999)("Even if the evidence could also support another

10

conclusion, the decision of the Administrative Law Judge must stand if the evidence could reasonably support the conclusion reached.")  This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.  *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether proper legal standards were applied. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal.  *See, e.g.,White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."  *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996); accord *Shrader v. Astrue*, 2012 WL 5383120 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the Court cannot determine if it was discounted or merely overlooked."); *McHugh v. Astrue*, 2011 WL 6130824 (S.D. Ohio Nov. 15, 2011); *Gilliam v. Astrue*, 2010 WL 2837260 (E.D. Tenn. July 19, 2010); *Hook v. Astrue*, 2010 WL 2929562 (N.D. Ohio July 9, 2010).

11

## VI.  ANALYSIS

**A.      First Assignment of Error: Credibility**

In his first assignment of error, Ingram argues the "ALJ's credibility analysis was contrary to law and not supported by substantial evidence."  (Doc. No. 13 at 8.)  He asserts since "abdominal pain is his major impediment to working," the ALJ's observation Ingram's hypertension and diabetes did not result in any complications does not demonstrate "a lack of credibility or any inconsistency with the medical evidence."  (*Id*. at 9.)  Ingram contends the ALJ did not address his consistent reports of pain with movement and the "ALJ's reliance on Mr. Ingram's alleged performance of 'moderate' activities . . .is legally unsupportable."  (*Id*. at 10.)

The Commissioner asserts the ALJ properly considered Ingram's subjective complaints. (Doc. No. 14 at 8.)  The Commissioner contends the medical evidence of record "did not show consistent reports of abdominal pain or pain upon movement to his treating providers."  (*Id*. at 9.)  She argues Ingram's allegations are "contradicted by the record, and the ALJ properly contrasted his allegations by nothing that [Ingram] had normal physical examinations throughout the record."  (*Id*. at 10.)

It is well settled that pain alone, if caused by a medical impairment, may be severe enough to constitute a disability.  *See Kirk v. Sec' of Health and Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981), cert. denied, 461 U.S. 957, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983). However, when a claimant alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating these symptoms.  *See e.g, Massey v. Comm'r of Soc. Sec*., 2011 WL 383254 at * 3 (6th Cir. Feb. 7, 2011).  First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be

expected to produce a claimant's symptoms.  Second, the ALJ "must evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work."  20 C.F.R. § 404.1529(c)(1).  *See also* SSR 16-3p,[4] 2016 WL 1119029 (March 16, 2016).  Essentially, the same test applies where the alleged symptom is pain, as the Commissioner must (1) examine whether the objective medical evidence supports a finding of an underlying medical condition; and, if so, (2) whether the objective medical evidence confirms the alleged severity of pain arising from the condition or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.  *Duncan v. Secretary of Health & Human Services*, 801 F.2d 847, 853 (6th Cir. 1986).  *See also Felisky v. Bowen*, 35 F.3d 1027, 1038–39 (6th Cir. 1994); *Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 834 (6th Cir. June 2005).

If these claims are not substantiated by the medical record, the ALJ must make a credibility[5] determination of the individual's statements based on the entire case record.  Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See*

---

[4]    SSR 16-3p superceded SSR 96-7p, 1996 WL 374186 (July 2, 1996) on March 28, 2016.  Thus, SSR 16-3 was in effect at the time of the April 27, 2016 hearing.

[5]    SSR 16-3p has removed the term "credibility" from the analysis.  Rather, SSR 16-3p directs the ALJ to consider a claimant's "statements about the intensity, persistence, and limiting effects of the symptoms," and "evaluate whether the statements are consistent with objective medical evidence and other evidence."  SSR 16-3p, 2016 WL 1119029 at *6.  The Sixth Circuit has characterized SSR 16-3p as merely eliminating "the use of the word 'credibility' ... to 'clarify that subjective symptom evaluation is not an examination of an individual's character.'"  *Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016).  Neither party has argued the analysis is different under SSR16-3p, though Ingram has incorrectly asserted SSR 16-3p was issued following the June 28, 2016 ALJ decision.  (Doc. No. 13 at 9.)

13

*Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 248 (6th Cir. 2007) ("noting that "credibility determinations regarding subjective complaints rest with the ALJ").  The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  Nonetheless, the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms"  SSR 16-3p, 2016 WL 1119029; *see also Felisky*, 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so").

        To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record.  *See* 20 C.F.R. §404.1529; SSR 16-3p, Purpose, 2016 WL 1119029  (March 16, 2016).  Beyond medical evidence, there are seven factors that the ALJ should consider.[6]  The ALJ need not analyze all

---

[6]        The seven factors are: (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  *See* SSR 16-3p, 2016 WL 1119029 at * 7; *see also Cross v. Comm'r of Soc. Sec*., 373 F.Supp.2d 724, 732–733 (N.D. Ohio 2005) (stating that an ALJ, in a unified statement, should explain his or her credibility findings in terms of the factors set forth in the regulations, thereby permitting the court to "trace the path of the ALJ's reasoning.")

seven factors, but should show that he considered the relevant evidence.  *See Cross*, 373 F.

Supp.2d at 733; *Masch v. Barnhart*, 406 F. Supp.2d 1038, 1046 (E.D. Wis. 2005).

Here, the ALJ acknowledged Ingram's testimony and written statements regarding his

abdominal pain, ventral hernia, and diverticulitis.  (Tr. 30, 31.)  He noted Ingram's testimony "he

can stand 30 minutes and sit 30 minutes at a time" and had to "stop working because the pain

was too bad."  (Tr. 31.)  The ALJ provided a discussion of Ingram's treatment notes, the

diagnostic testing, the objective findings upon examination, and the medical opinion evidence.

(Tr. 31-32.)  The ALJ determined Ingram's medically determinable impairments could

reasonably be expected to cause the alleged symptoms.  However, the ALJ found his statements

concerning the intensity, persistence, and limiting effects of these symptoms were not entirely

consistent with objective evidence of record.  (Tr. 31.)

The ALJ then provided the following comparison of Ingram's allegations to the medical

evidence:

> For example, as noted above, the claimant has received treatment for
> hypertension; however, this has been diagnosed as benign essential
> hypertension (Exhibit 2F).  The claimant denies chest pain, cough, and
> headache (Exhibit 11F at 2, 15, 20, 25, 30, and 34).  There is no other
> objective evidence of complications related to this impairment.  Similarly,
> despite treatment for diabetes, the claimant denied blurred vision,
> hypoglycemia, nocturia, peripheral neuropathy, and yeast infections
> (Exhibit 11F at 6, 10, 15, 20, 25, 30, and 34).  He was diagnosed with
> diabetes without complication (Exhibit 11F at 6).
>
> As noted above, the claimant had a perforated diverticulitis and reversal of
> ileostomy in 2012 (See Exhibit 6F at 5).  A subsequent CT scan was done
> and showed ventral hernia with small bowel content but without signs of
> obstruction.  The claimant underwent hernia repair in March 2014 (Exhibit
> 3F).  However, he continued to complain of abdominal pain (Exhibit 11F at
> 2).  On examination in March 2015, the claimant's range of motion,
> strength, and tone were normal, and the claimant's neurological
> examination was essentially normal.  Follow-up examinations document

15

> stable findings from previous examinations (Exhibit 11F at 9, 17, 22, 25,
> 31, and 35).  In fact, the claimant reported minimal abdominal pain and
> normal ileostomy function (Exhibit 11F at 10, 20, and 34).  The claimant
> also reported engaging in "moderate" activity.  He reported to his treating
> physician that his abdominal pain was usually present after eating certain
> foods (Exhibit 11F at 15 and 30).

(*Id.*)

Substantial evidence supports the ALJ's assessment of Ingram's subjective complaints.

Ingram underwent several abdominal surgeries, including a laparascopic hernia repair in March

2014 and excision of a lower abdominal wall lesion in January 2015.  (Tr. 265, 304, 309.)  In

March 2015, he reported continued abdominal pain to Dr. Hazem.  (Tr. 309.)  However, on

examination, Ingram's abdomen was non-tender and he had normal bowel sounds.  (Tr. 311.)

His musculoskeletal and neurological examinations were also normal.  (*Id.*)  Ingram continued to

visit Dr. Hazem every few months for treatment.  (Tr. 317, 322, 327, 332.)  Within these

treatment notes, Dr. Hazem often noted Ingram had "minimal pain in the abdomen" and "no

current pain in incision."  (Tr. 317, 322, 327, 332, 341.)  Ingram's physical examination findings

often indicated no abdominal tenderness and normal bowel sounds, strength and range of motion.

(Tr. 315, 319, 324, 329, 334, 338, 342.)  In February 2016, Ingram did require a prescription for

Percocet.  (Tr. 339.)  However, there is no indication Ingram sought treatment from a pain

management physician or required a more aggressive approach to manage his pain.

Ingram argues the ALJ did not address his "consistent complaints of pain upon

movement which recur throughout the record."  (Doc. No. 13 at 10.)  He notes he reported pain

"comes and goes" at his March 2015 consultative examination and pain with bending over in an

April 2015 Disability Report.  (Doc. No. 13 at 10, Tr. 242, 214.)  He also references his hearing

testimony, where he described difficulty bending over.  (Doc. No. 13 at 10.)  However, Ingram

16

does not acknowledge the ALJ did repeatedly note his allegations of pain. Indeed, the ALJ referenced Ingram's reports of abdominal pain at multiple points in the decision, noting Ingram's allegations of pain during a July 2014 phone call with the state disability determination services, at the hearing, to Dr. Nouraldin, and during his August 2014 consultative examination. (Tr. 30-31, 194, 58, 271, 309.) The ALJ was aware of Ingram's reports of abdominal pain and evaluated them accordingly.

Moreover, the medical evidence of record does not support Ingram's contention he had consistent pain with movement. During both of Ingram's consultative examinations, he was able to rise from a seated position without difficulty, fully squat, and needed no assistance in getting on and off the examination table. (Tr. 272, 244.) In Dr. Nouraldin's treatment notes, Ingram was noted to have "minimal pain in the abdomen." (Tr. 317, 322, 327, 332, 341.)

Ingram further argues since his disability is "due to pain, not due to loss of strength or mobility . . . normal strength, range of motion, and routine neurological tests are not necessarily incompatible with his allegations of disabling abdominal pain." (Doc. No. 13 at 10.) However, Ingram does not direct this Court's attention to any objective examination findings which support his reports of disabling pain. Rather, it appears Ingram is arguing the ALJ should have merely accepted all of Ingram's allegations, despite the fact the physical examination findings were normal.

Ingram also objects to the ALJ's "reliance on [his] alleged performance of 'moderate' activities as evidence that he can do more than he has alleged." (Doc. No. 13 at 10.) He notes

17

the "term 'moderate' is not defined anywhere" and references SSR 96-5p,[7] arguing this SSR

cautions against an assumption "a medical source using terms such as 'sedentary' and 'light' is

aware of our definitions of these terms."  (*Id.*)  As an initial matter, SSR 96-5p relates to medical

source opinions on issues reserved for the Commissioner.  SSR 96-5p (S.S.A.), 1996 WL 374183

(July 2, 1996).  Dr. Nouraldin's treatment note describing Ingram's activity level is not a medical

source opinion and the ALJ did not treat it as such.  SSR 96-5p is therefore not instructive, as the

ALJ was not improperly giving credence to a treating physician's opinion on Ingram's

vocational capability.  Moreover, while SSR 96-5p dictates an ALJ should not assume a treating

source is familiar with the definitions of the various exertional levels (i.e. sedentary, light, and

medium), it does not provide any guidance on a physician's use of the word moderate.  Ingram

summarily contends "[t]his is clearly the case with the word 'moderate' as well."  (Doc. No. 13

at 10.)  However, he provides no authority, beyond his own speculation, it was improper for the

ALJ to note a treating source observed Ingram was engaging in a moderate level of activity.

Ingram argues since his "abdominal pain is his major impediment to working," the

ALJ's discussion of Ingram's hypertension and diabetes "demonstrate neither a lack of

credibility nor any inconsistency with the medical evidence."  (Doc. No. 13 at 9.)  The ALJ was

charged with considering all of Ingram's medically determinable impairments.  *See* 20 C.F.R.

§404.1545(a)(2) ("We will consider all of your medically determinable impairments of which we

are aware, including your medically determinable impairments that are not "severe" . . .).  The

discussion of Ingram's hypertension and diabetes is not improper because Ingram did not allege

---

[7]      SSR 96-5p was rescinded on March 27, 2017, subsequent to Ingram's
administrative hearing and ALJ decision.  *See* 82 Fed. Reg. 15263-01 (March 27,
2017).

18

they were disabling impairments.  Moreover, despite Ingram's suggestion otherwise, the ALJ's credibility analysis was not limited to Ingram's hypertension and diabetes.  Indeed, the ALJ also provided a discussion of Ingram's abdominal surgeries, diagnostic testing, the normal physical examination findings, and the conclusions of the consultative examiners.  (Tr. 31, 32.)

Finally, Ingram notes he had an "exemplary work history" prior to his abdominal surgeries.  (Doc. No. 13 at 10, 11.)  Ingram does not argue the ALJ should have referenced this in the decision.[8]  It appears he is arguing his work history further supports his allegations of pain, thereby undermining the ALJ's evaluation of his subjective complaints.  However, it is not this Court's role to "reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ."  *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x 411, 414 (6th Cir. Apr. 1, 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)).  *See also Vance v. Comm'r of Soc. Sec.*, 260 Fed. App'x 801, 807 (6th Cir. Jan. 15, 2008) (stating that "it squarely is not the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility.")

In sum, the ALJ considered a number of factors in assessing Ingram's credibility, including his treatment course, the objective findings upon examination, and the opinions of the examining physicians.  These factors are supported by the evidence in the record and are sufficiently specific to make the basis of the ALJ's credibility analysis clear.

---

[8]    Assuming, *arguendo*, Ingram was making this argument, SSR 16-3p does not require an ALJ to discuss a claimant's work history when evaluating subjective complaints.  *See* SSR 16-3p.  *See also Dutkiewicz v. Comm'r of Soc. Sec.*, 663 Fed. App'x 430, 433 (6th Cir. Oct. 17, 2016)("The ALJ was not required to explicitly discuss Dutkiewicz's work history when assessing his credibility.").

Accordingly, the Court finds substantial evidence supports the ALJ's credibility assessment.  Ingram's first assignment of error is without merit.

**B.       Second Assignment of Error: Opinion Evidence**

In his second assignment of error, Ingram argues the ALJ erred in rejecting the opinion of consultative examiner Dr. Assaf "in favor of the opinion of a non-examining physician." (Doc. No. 13 at 11.)  Ingram asserts the ALJ "erred in failing to re-contact Dr. Assaf to obtain a clearer explanation of the term 'mildly'" in his opinion.  (*Id*. at 12.)  Ingram contends "proper characterization of the extent of limitation of [his] ability to stand and walk was vital to a proper determination of disability," as a finding of "light work" would have directed a finding of disability under the Medical-Vocational Guidelines.  (*Id*. at 12, 13.)

The Commissioner maintains the ALJ appropriately afforded more weight to the non-examining physicians' opinions than to Dr. Assaf's opinion.  (Doc. No. 14 at 14.)  She argues the ALJ generally accepted Dr. Assaf's medical findings, but "properly noted that Dr. Assaf's unexplained conclusion that Plaintiff had mild limitations" was vague.  (*Id*. at 15.)  The Commissioner asserts Ingram "provides no authority supporting his argument that the ALJ was required to re-contact Dr. Assaf."  (*Id*. at 16.)  She argues since "Dr. Assaf's report was not inadequate or incomplete, the ALJ did not have to re-contact him for clarification."  (*Id*. at 17.)

In formulating the RFC, ALJs "are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists."  20 C.F.R. § 404.1527(e)(2)(i).[9]  Nonetheless, because "State agency medical and psychological consultants

---

[9]        Revised versions of these regulations took effect on March 27, 2017 and apply to disability claims filed on or after that date.  *See* 82 Fed. Reg. 5844 (March 27, 2017).

and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists," ALJs must consider their findings and opinions.  *Id.*  When doing so, an ALJ "will evaluate the findings using the relevant factors in paragraphs (a) through (d) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions."  20 C.F.R. § 404.1527(e)(2)(ii).  Finally, an ALJ "must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist" unless a treating physician's opinion has been accorded controlling weight.  *Id.*

As the Sixth Circuit has explained, "as a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a 'nonexamining source'), id. § 404.1502, 404.1527(c)(1), and an opinion from a medical source who regularly treats the claimant (a 'treating source') is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a 'nontreating source'), id. § 404.1502, 404.1527(c)(2)." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013).  In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."  Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).[10]

---

[10]     SSR 96-6p was rescinded on March 27, 2017, but was in effect at the time of Ingram's administrative hearing.  *See* SSR 17-2p, 2017 WL 3928306 at *1 (Soc. Sec. Admin. Mar. 27, 2017).

21

The ALJ, in addressing Dr. Assaf's opinion and those of the non-examining state agency physicians, found as follows:

> Hasan Assaf, M.D., examined the claimant at the request of the Disability Determination Services (DDS) on August 25, 2014 (Exhibit 5F).  The claimant alleged that he had been experiencing abdominal pain since his surgeries in 2012.  Dr. Assaf concluded that the claimant is mildly limited in his ability to perform activities requiring prolonged standing and walking.  The undersigned gives some weight to the conclusions of Dr. Assaf as they are generally supported by objective signs and findings upon examining the claimant.  For example, Dr. Assaf noted that the claimant's gait was normal, squat was full, and he experienced no difficulty getting off and on the examination table or rising from a chair.  The claimant exhibited left lower quadrant tenderness.  However, range of motion and strength were essentially normal throughout.  While these findings are consistent with the ability to perform a reduced range of medium exertion work, his conclusion that the claimant is "mildly" limited is vague.
>
> John Mormol, M.D., evaluated the claimant's physical condition based on the evidence of record without examining the claimant on behalf of DDS on September 2, 2014 (Exhibit 1A).  Dr. Mormol concluded that the claimant is capable of medium exertion work with no climbing of ladders, ropes, or scaffolds.  This assessment was essentially affirmed upon reconsideration except for occasional climbing of ladders, ropes, scaffolds and frequent stooping (Exhibit 5A).  The undersigned gives great weight to the conclusions of the evaluating sources as they are consistent with the weight of the objective evidence of record.  As outlined above, while the claimant experienced continued abdominal pain after his surgery, range of motion, strength, and gait were all within normal limits.  He also generally denied complications related to hypertension and diabetes.  However, his exertional capacity is somewhat limited to avoid exacerbation of his conditions.

(Tr. 31-32.)

The Court finds the ALJ did not err in ascribing greater weight[11] to the opinions of the

---

[11]     The Court notes Ingram asserts the ALJ rejected Dr. Assaf's opinion.  (Doc. No. 13 at 11.)  However, the ALJ did not "reject" Dr. Assaf's opinion, but assigned it some weight, noting the objective findings on examination were "consistent with the ability to perform a reduced range of medium exertion work."  (Tr. 31-32.) Regardless, the crux of Ingram's argument is the ALJ erred in assigning greater

non-examining state agency physicians over the opinion of Dr. Assaf, a consultative examiner.

While an ALJ will generally afford greater weight to physicians who have examined a claimant,

the regulations do not *require* the ALJ to assign more weight to the opinion of an examining

source over a non-examining source.  *See* 20 CFR § 416.927(c)(1).[12]  Rather, "it is the ALJ who

is charged with the duty to evaluate all of the medical opinions in the record and resolve any

conflicts that might appear."  *Pue v. Astrue*, 2012 WL 2251465, *6 (N.D. Ohio June 15,

2012)(citing 20 CFR §§ 404.1527(c)(4) & (e)(2)).  Thus, it was within the ALJ's discretion to

assign greater weight to the state agency physicians' opinions.  *See Carpenter v. Berryhill*, 2017

WL 6806258, *10 (N.D. Ohio Dec. 13, 2017)("Plaintiff's assertion that the ALJ may not assign

greater weight to the opinions of the non-examining state agency reviewing physicians is

incorrect.").  *See also Lowther v. Comm'r of Soc. Sec.*, 2016 WL 7111604, *7 (S.D. Ohio Dec. 7,

2016)(finding it was within an ALJ's "zone of choice" to place more weight on the conclusions

of the non-examining state agency physician over those of the examining consultative

examiners).

Ingram further argues since the ALJ found Dr. Assaf's opinion vague, "the ALJ erred in

failing to re-contact Dr. Assaf to obtain a clearer explanation of the term 'mildly' in this

instance."  (Doc. No. 13 at 12.)  The Court notes Ingram, in his brief, invokes SSR 96-5p[13] in

---

weight to the opinions of the state agency physicians over the opinion of Dr. Assaf.  (Doc. No. 13 at 11, 12.)

[12]  Revised versions of these regulations took effect on March 27, 2017 and apply to disability claims filed on or after that date.  *See* 82 Fed. Reg. 5844 (March 27, 2017).

[13]  As noted *supra*, SSR 96-5p was rescinded on March 27, 2017.  *See* 82 Fed. Reg. 15263-01 (March 27, 2017).

support of this argument.  (*Id.*)  However, SSR 96-5p only pertains to contacting *treating*

sources.  *See* SSR 96-5p (S.S.A.), 1996 WL 374183, *6 (July 2, 1996).  Because Dr. Assaf is not

a treating source, SSR 96-5p is not instructive.

   The social security regulations do provide the agency will re-contact a consultative

examiner for clarification when the examiner's report is "inadequate or incomplete."  *See* 20

C.F.R. §§ 404.1519p(b), 416919p(b).  However, Ingram has not shown Dr. Assaf's report was

inadequate or incomplete, necessitating further contact.  To the contrary, Dr. Assaf's report

contained a history of Ingram's impairments and subjective complaints, the physical examination

findings, a completed range of motion chart, and diagnoses.  (Tr. 271-279.)  While the ALJ

characterized Dr. Assaf's opinion as vague, "a consultative examiner's report is not rendered

incomplete by the absence of a statement about what a claimant can still do despite his

limitations."  *See Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 122 (6th Cir. July 28,

2016)(finding an ALJ was not required to contact a consultative examiner when the ALJ found

the opinion to be vague and unsupported by the evidence).  *See also Hamilton v. Comm'r of Soc.

Sec.*, 2016 WL 4771238, *5 (W.D. Mich. Sept. 14, 2016)(finding an ALJ did not have to contact

a consultative examiner whose opinion the ALJ found vague).  Thus, the ALJ did not have a duty

to request clarification from Dr. Assaf because his report was not inadequate or incomplete.

   Moreover, substantial evidence supports the ALJ's determination Dr. Assaf's opinion

was vague.  During his physical examination with Dr. Assaf, Ingram  "appeared to be in no acute

distress," had a normal gait, could walk on his heels and toes, fully squat, and rise from his chair

without difficulty.  (*Id.*)  There was tenderness in the left lower quadrant of his abdomen, but his

bowel sounds were normal and his abdomen was soft.  (Tr. 273.)  His joints were stable and

nontender, beyond some tenderness over his knees.  (*Id.*)  He had no sensory deficits and full

strength in his upper and lower extremities.  (Tr. 273, 276.)  The range of motion in his cervical

spine, shoulders, elbows, hips, knees, ankles, and dorsolumbar spine were all normal.  (Tr. 277-

279.)  Based upon this examination, Dr. Assaf concluded "[t]here are mild limitations on

activities requiring prolonged standing and walking."  (Tr. 274.)  Dr. Assaf did not explain what

"mild" limitations constituted and did not quantify the amount of time Ingram could stand or

walk.  Thus, the record supports the ALJ's conclusion the limitation Dr. Assaf placed on Ingram

was vague.  An ALJ is permitted to discount an consultative examiner's opinion due to

vagueness.[14]  *See Garcia v. Comm'r of Soc. Sec.*, 2018 WL 838371, *12 (N.D. Ohio Feb. 12,

2018).  *See also Dooley*, 656 Fed. App'x at 121-122.  As the ALJ's conclusion regarding Dr.

Assaf's is supported by substantial evidence, his decision to assign greater weight to the

opinions[15] of the non-examining state agency physicians, who did provide specific physical

restrictions, was a reasonable one.

      Finally, Ingram summarily asserts the ALJ should have limited him to the light[16]

---

[14]    The Court notes Ingram does not argue the ALJ's was incorrect in characterizing
Dr. Assaf's opinion as vague.  Rather, Ingram asserts the ALJ should have
contacted Dr. Assaf for clarification.  (*See* Doc. No. 13 at 12.)

[15]    Ingram does not raise any arguments regarding the ALJ's decision to assign
"great weight" to the state agency physicians.  Instead, he argues it was improper
for the ALJ to assign greater weight to these opinions over the opinion of Dr.
Assaf.  (*See* Doc. No. 13 at 12.)

[16]    "Light work" is defined as follows: "Light work involves lifting no more than 20
pounds at a time with frequent lifting or carrying of objects weighing up to 10
pounds. Even though the weight lifted may be very little, a job is in this category
when it requires a good deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls. To be
considered capable of performing a full or wide range of light work, you must

25

exertional level, which would have directed finding of disabled under the Medical-Vocational

Guidelines.[17]  (Doc. No. 13 at 12, 13.)  However, Ingram does not point to any objective medical

evidence which a basis for greater physical limitations than assessed by the ALJ.  Rather, Ingram

refers to his own subjective complaints to support his argument.  It is Ingram's burden to prove

his RFC.  *See Garcia*, 2018 WL 838371, at *12.  Moreover, the ALJ's RFC[18] is supported by

substantial evidence.  There are no opinions contained in the record limiting Ingram to a light

exertional RFC.  Rather, all of the opinion evidence supports a finding of a medium RFC or mild

physical limitations.  In fact, a consultative examiner in March 2015 opined Ingram had no

limitations.  (Tr. 245.)  The physical examination findings made during both consultative

examinations were overall normal.  (Tr. 244, 272-273.)  Moreover, as noted by the ALJ, there is

no treating source opinion on Ingram's physical capabilities.  (Tr. 31.)

In sum, the ALJ did not err in his evaluation of the opinion evidence.  The ALJ

provided a valid reason for assigning less weight to Dr. Assaf's opinion over the opinions of the

---

have the ability to do substantially all of these activities." 20 CFR § 404.1567(b).
Social Security Ruling 83–10 clarifies that "since frequent lifting or carrying
requires being on one's feet up to two-thirds of a workday, the full range of light
work requires standing or walking, off or on, for a total of approximately six
hours of an 8–hour workday." SSR 83–10, 1983 WL 31251 (1983).

[17]  The Medical-Vocational Guidelines, or "grid rules," contain tables of rules which
use a claimant's RFC, age, education, and work experience to, under certain
circumstances, direct a determination of disabled or not disabled.  *See* 20 CFR Pt.
404, Subpt. P, App. 2, Sec. 200.00(a).

[18]  The ALJ assessed the following RFC: After careful consideration of the entire
record, the undersigned finds that the claimant has the residual functional capacity
to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with
the following additional limitations: occasional climbing of ladders, ropes, or
scaffolds and frequent stooping.  (Tr. 30.)

26

non-examining physicians.  Moreover, the RFC was supported by the limitations assessed by the state agency physicians, as well as the objective findings contained in the record.

Accordingly, the Court finds substantial evidence supports the ALJ's assessment of the opinion evidence.  Ingram's second assignment of error is without merit.

## VII.    CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.


 _s/Jonathan D. Greenberg_
Jonathan D. Greenberg
United States Magistrate Judge

Date: August 17, 2018

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**